UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY,           Case No. 1:08-cv-00796
a Minnesota corporation,                     Hon. Paul L. Maloney
                                             Magistrate Judge Joseph G. Scoville

    Plaintiff,

v

ESCROW & TITLE SERVICES, INC.
(d/b/a BELL TITLE COMPANY )
a Michigan corporation,

    Defendant.
_____

CHARITY A. OLSON (P68295)              WILLIAM E. HOSLER (P41257)
KURT E. RIEDEL (P27190)                Williams, Williams, Rattner & Plunkett, P.C.
Plunkett Cooney                        Attorneys for Defendant
Attorneys for Plaintiff                380 North Old Woodward, Suite 300
38505 Woodward Ave., Ste. 2000         Birmingham, MI  48009
Bloomfield Hills, MI 48304             (248) 642-0333
(248) 901-4018                         weh@wwrplaw.com
colson@plunkettcooney.com
_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BELL TITLE'S
MOTION TO DISMISS AND/OR FOR FULL OR PARTIAL SUMMARY JUDGMENT**

\* **ORAL ARGUMENT REQUESTED** \*

1

Plaintiff, Old Republic National Title Insurance Company ("ORT"), by and through its attorneys, Plunkett Cooney, for its Response to Defendant Bell Title's Motion to Dismiss and/or For Full or Partial Summary Judgment, states as follows:

1. Admitted.

2. Admitted.

3. Denied as untrue. No such motion to compel was ever filed. Answering further, counsel for the parties conferred and met informally to exchange documents throughout the discovery period.

4. Denied as untrue.

5. Denied as untrue.

6. Admitted; however, counsel have conferred both prior to and since the filing of Defendant's motion to narrow the areas of disagreement.

WHEREFORE, Old Republic National Title Insurance Company respectfully requests that this Honorable Court permit oral argument regarding the motion, as provided for in the local rules, deny Defendant's motion and grant such other and further relief as is just and proper.

    Respectfully Submitted,

    s/Charity A. Olson
    CHARITY A. OLSON (P68295)
    KURT E. RIEDEL (P27190)
    Plunkett Cooney
    Attorneys for Plaintiff
    38505 Woodward Ave., Ste. 2000
    Bloomfield Hills, MI 48304
    (248) 901-4018
    colson@plunkettcooney.com

Dated: July 31, 2009

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT BELL TITLE'S MOTION TO DISMISS AND/OR FOR FULL OR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

MOST CONTROLLING AUTHORITIES……………………………………….................4

I. INTRODUCTION..………………………………………………………………5

II. COUNTER-STATEMENT OF FACTS…………………………………………5

III. THE JACKSON CLOSING / JP MORGAN CLAIM……………………….....7

IV. THE EDWARDS CLOSING / ARGENT CLAIM……………………………..10

V. ARGUMENT………………………………………………………………………11

    A. ORT Has Stated Viable Claims Against Bell Title Upon Which Relief Can Be Granted and Has Proffered Affirmative and Sufficient Evidence Upon Which a Reasonable Trier of Fact Could Conclude That Bell Title Is Liable To ORT…………………………………………………11

        1. The Complaint Provides Fair Notice of the Nature of ORT's Claims and the Factual and Legal Grounds Upon Which ORT Seeks Recovery……………………………………………………11

        2. Affirmative and Sufficient Evidence Exists Upon Which A Reasonable Factfinder Could Conclude That Bell Title Is Liable for ORT's Losses in Conjunction With The Jackson Closing……………………………………………………13

        3. Affirmative and Sufficient Evidence Exists Upon Which A Reasonable Factfinder Could Conclude That Bell Title Is Liable for ORT's Losses in Conjunction With The Edwards Closing…………………………………………………..16

VI. CONCLUSION…………………………………………………………………18

# MOST CONTROLLING AUTHORITIES

**Cases**
*Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007) ............................................................................. 12
*Deutsche Bank Trust Co. Americas v. Spot Realty, Inc.*, 269 Mich. App. 607, 714 N.W.2d 409 (2005) ............................................................................................................................................. 15
*Flagstar Bank v. Charter Bank*, 2005 WL 2045907 (Mich. App. 2005) ...................................... 15

**Statutes**
11 U.S.C. § 547(e)(2)(C)(ii) ............................................................................................................. 11
M.C.L. § 565.41 ......................................................................................................................... 14, 15
M.C.L. § 565.901(1) ........................................................................................................................ 15

**Rules**
Fed. Civ. Proc. 8(a)(2)-(3) ............................................................................................................... 11

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT BELL TITLE'S MOTION TO DISMISS AND/OR FOR FULL OR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff's lawsuit properly seeks recovery of certain title insurance claims losses sustained by ORT as a direct result of certain actions, errors and omissions by its former title insurance agent, Bell Title, in connection with real estate closings transactions conducted by Bell Title. ORT is entitled to recover all such losses, as plead in the Complaint, and has proffered affirmative and sufficient proofs evidencing Bell Title's liability. For all of the reasons that follow, Defendant's motion should be denied.

## II. COUNTER-STATEMENT OF FACTS

On September 22, 1994, ORT entered into an "Agreement for Appointment of Policy Issuing Agent" (the "Agency Agreement") with Bell Title, whereby ORT appointed Bell Title as its agent to issue title insurance commitments and policies in connection with real estate closing transactions in Michigan. A true and accurate copy of the Agency Agreement setting forth the parties' duties, responsibilities, and rights is attached hereto as **Exhibit A.**

As an agent for ORT, Bell Title retained 80% of the title insurance premium paid for each policy issued on behalf of ORT in conjunction with such real estate closings. *Id.*, Section VI. The remaining 20% of the insurance premium was then remitted to ORT. *Id*.

With respect to processing and issuance of commitments and policies underwritten by ORT, Bell Title was required and expressly agreed to "receive and process applications for title insurance and issue polices in a timely, prudent and ethical manner with due regard to recognized title insurance underwriting practices and in accordance with the rules and instructions of the insurer, as well as in conformity with state and local laws and practice." *Id.*, Section III. Bell

Title was also required and expressly agreed to identify as exceptions to coverage all matters such as taxes, encumbrances, liens, restrictions, easements, and any other matters which constituted a defect or question as to the validity or marketability of the title being insured. *Id.*, Section VIII.

Pursuant to Section VII of the Agency Agreement, "Responsibility for Loss," Bell Title agreed to reimburse and/or indemnify ORT for losses arising from the title insurance business conducted by Bell Title pursuant to the Agency Agreement, including, but not limited to, losses occasioned by:

> a. Intentional or negligent failure of Agent to comply with the terms and requirements of the Agency Agreement or of the rules, regulations or instructions given to Agent by Insurer;
>
> b. Intentional omission from commitments or policies of reference to encumbrances or title defects disclosed by application, by the Agent's search and examination of title, by an approved examiner's report, or certification of title, or which were otherwise known to the Agent at the time of issuance of insurance;
>
> c. The improper closing or attempted closing by the Agent including, but not limited to, the failure to disburse properly or close in accordance with escrow or closing instructions; and
>
> d. Negligent errors or omissions in the search, or examination of title, in the preparation of title insurance forms or in other procedures involved in processing an application for title insurance.

*Id*.

Notably, and with respect to such claims and losses, ORT retained the "exclusive right to adjust, pay or compromise all claims and the sole discretion to commence, defend against or settle legal proceedings in connection therewith." *Id.*, at VII.

Such losses form the basis for ORT's instant lawsuit, which seeks reimbursement from Bell Title for payments made by ORT to insured and third-party claimants, as well attorneys'

6

fees and costs occasioned by such claims, as contemplated by the parties and as provided for within the Agency Agreement.

### III.  THE JACKSON CLOSING/JP MORGAN CLAIM

On February 28, 2003, Andrew and Rose Jackson borrowed $97,800 from Resource Mortgage.  The loan was to be secured by a first mortgage lien against the real property located at 508 West Maple Street, Lansing, Michigan 48906 as recorded with the Ingham County Register of Deeds on May 27, 2003 at Liber 3033, Page 31 (the "Jackson mortgage").  **Exhibit B**: Jackson mortgage.

At the time of closing, Bell Title issued a Loan Commitment of Title Insurance and/or Loan Policy of Title Insurance to Resource Mortgage, its successors and assigns for the purpose of insuring the Jackson mortgage as a valid first lien against the subject property.  **Exhibit C:** Commitment.  It is undisputed that certain proceeds from the Jackson mortgage were to be used to pay off and discharge a future advance mortgage which was previously given by the seller, Joe Vermetti ("Vermetti"), to LaSalle Bank Midwest, N.A. (f/k/a Standard Federal) (n/k/a Bank of America) on October 25, 2002, as recorded with the Ingham County Register of Deeds on December 5, 2002 at Liber 2995, Page 1086 (the "Vermetti mortgage").  **Exhibit D:** Escrow/Closing Instructions**; Exhibit E:** Vermetti mortgage.

The Vermetti mortgage of record and known to Bell Title at the time of closing secured a revolving line of credit that Vermetti held with Standard Federal.  *Id*. The recorded document set forth the following provisions regarding termination of the underlying credit line and discharge of the mortgage:

> **Grantor acknowledges and agrees that this Mortgage shall not be extinguished, and the priority of this Mortgage shall not be altered in any way, if the Indebtedness secured hereby is reduced to a balance of zero at any time or from time to time.  This mortgage shall terminate only after all**

7

> **amounts due to Lender under this Mortgage and the Credit Agreement have been paid in full, the Credit Agreement has been terminated by Grantor or cancelled by Lender, and a discharge of this Mortgage has been duly recorded by Lender.**

*Id.*, pg. 1 (emphasis added).

The closing statement from the Jackson transaction reveals that Bell Title issued a check to Standard Federal in the amount of $70,360.52 to pay off the revolving line of credit as envisioned by the parties. **Exhibit F:** HUD-1 Statement. The revolving line of credit was never closed, however, nor was the Vermetti mortgage discharged from the chain of title.

The Jackson mortgage was subsequently assigned from Resource Mortgage to JP Morgan Chase Bank ("JP Morgan") as recorded with the Ingham County Register of Deeds on April 29, 2004 at Liber 3105, Page 367. Thereafter, on or about October 5, 2005, ORT received notice of a title claim submitted by counsel for Homecomings Financial Network, as servicer to JP Morgan, pursuant to the terms and conditions of the title commitment and/or policy which was issued by Bell Title (the "JP Morgan claim"). **Exhibit G:** Savich Affidavit, ¶ 3 and Tab 1 therein. The JP Morgan claim was tendered to Old Republic following JP Morgan's receipt of a Summons and Complaint filed by LaSalle Bank Midwest N.A. (f/k/a Standard Federal Bank, N.A.) seeking, *inter alia*, judicial foreclosure of the Vermetti mortgage and was assigned to Philip T. Savich ("Savich"), Vice President and Michigan State Counsel for ORT, for review, investigation and resolution. *Id.*, at ¶ 5.

As set forth in the attached Affidavit, Savich's standard practice and procedure with respect to reviewing, investigating and resolving claims on behalf of ORT included, but was not limited to: (a) examining the claim letter and any supporting documentation provided by the insured; (b) contacting the title agent to request a copy of their complete closing file; and (c) ascertaining, in conjunction with his review of the title claim, supporting documents and agent

closing file, as supplemented by his communications with the insured, the agent and/or third-parties, if the claim is covered under the Loan Commitment of Title Insurance and/or Loan Policy of Title Insurance issued by the title agent at the time of closing. *Id.*, at ¶ 6. For purposes of claims that involved non-discharge of a previously recorded future advance mortgage secured by a revolving line of credit and alleged to have priority over ORT's insured mortgage, as was the case with the Jackson mortgage/JP Morgan claim, Savich's standard practice and procedure was to also request documentation from the title agent evidencing: (a) payoff of the revolving line of credit at the time of closing of the insured mortgage, including, copies of any checks issued by the title agent; (b) closure of the revolving credit line, including, copies of a signed, written request by the mortgagor requesting same ("close out letter"); (c) proof of transmittal of the payoff check and close out letter to the future advance mortgage holder; and (d) discharge of the future advance mortgage, including, copies of any documentation acknowledging same. *Id.*, at ¶ 7.

     Savich's review and investigation of the JP Morgan claim revealed the following: (a) the Loan Commitment of Title Insurance and/or Loan Policy of Title Insurance issued to Resource Mortgage by Bell Title insured Resource Mortgage, its successors and assignees' a valid first lien position against the subject property with respect to the Jackson mortgage; (b) the mortgage proceeds advanced by Resource Mortgage at the time of closing were to be used, in part, to pay off, close and discharge the Vermetti mortgage securing Vermetti's revolving line of credit with Standard Federal; and (c) Bell Title issued a check to Standard Federal in the amount of $70,360.52 at the time of the Jackson mortgage closing to pay off the revolving line of credit. *Id.*, at ¶ 8. It is Savich's recollection, however, that Bell Title could not produce documentation evidencing the existence and transmittal of a close out letter and/or written acknowledgment by

9

Standard Federal confirming closure of the line of credit and/or discharge of the Vermetti mortgage. *Id*.

Based on Savich's prior experience handling title claims involving the non-discharge of a previously recorded future advance mortgage secured by a revolving line of credit, and absent any documentation by Bell Title evidencing the existence and transmittal of a close out letter and/or written acknowledgment by Standard Federal confirming closure of the line of credit and/or discharge of the Vermetti mortgage, ORT tendered payment of $81,565.00 to LaSalle Bank to pay off the revolving line of credit and secure discharge of the Vermetti mortgage, thereby settling the LaSalle Bank legal proceedings and preserving JP Morgan's first lien mortgage interest in the property. *Id*., at ¶ 9. ORT also incurred additional fees and costs to settle the JP Morgan claim in the amount of $1,320. *Id*., at ¶ 10.

## IV. THE EDWARDS CLOSING/ARGENT CLAIM

On or about November 11, 2004, Patricia Edwards ("Edwards") and Terry Towers borrowed $136,800 from Argent Mortgage Company, LLC ("Argent"). The loan was to be secured by a first mortgage lien against the real property located at 1765 Aurelius Road, Holt, MI, as recorded with the Ingham County Register of Deeds on February 3, 2005 at Liber 3150, Page 488 (the "Edwards mortgage"). **Exhibit H:** Edwards Mortgage; **Exhibit I:** Closing Instructions.

At the time of closing, Bell Title issued a Loan Commitment of Title Insurance to Argent, its successors and assigns for the purpose of insuring the Edwards mortgage as a valid first lien against the subject property. **Exhibit J:** Commitment. Bell Title also issued correspondence to Argent on November 16, 2004 confirming that Bell Title had "closed and completely disbursed" the Edwards mortgage proceeds and that said mortgage was "a valid first lien" on the subject

10

property.  **Exhibit K**: First Lien/Title Clearance Letter.  Although the Edwards mortgage closing occurred on November 11, 2004, the mortgage, itself, was not recorded until 84 days later, on February 3, 2005.

In the interim, Edwards filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Western District of Michigan District on December 6, 2004.  The bankruptcy trustee subsequently initiated an adversary proceeding against Argent to avoid the Edwards mortgage as a preferential transfer because the mortgage was not recorded within the requisite ten day period set forth in 11 U.S.C. § 547(e)(2)(C)(ii).  ORT paid $19,000 to the bankruptcy trustee to settle the adversary proceeding, thereby preserving Argent's first mortgage lien against the subject property. ORT also incurred attorneys' fees and other costs in the amount of $2,497.50 to settle the trustee's claim.

## V. ARGUMENT

### A. ORT HAS STATED VIABLE CLAIMS AGAINST BELL TITLE UPON WHICH RELIEF CAN BE GRANTED AND HAS PROFFERED AFFIRMATIVE AND SUFFICIENT EVIDENCE UPON WHICH A REASONABLE TRIER OF FACT COULD CONCLUDE THAT BELL TITLE IS LIABLE TO ORT

#### 1. The Complaint Provides Fair Notice of the Nature of ORT's Claims and the Factual and Legal Grounds Upon Which ORT Seeks Recovery

ORT's Complaint articulates sufficient factual allegations constituting short and plain statements of the claims for which ORT seeks relief.  Fed. Civ. Proc. 8(a)(2)-(3).  The Complaint sets forth the specific closing transactions for which ORT seeks reimbursement from Bell Title and outlines the errors and omissions which were committed by Bell Title in each transaction resulting in the claims losses sustained by ORT.

Clearly the facts as alleged by ORT, and accepted as true for purposes of Defendant's 12(b)(6) request, state a viable claim for breach of contract (i.e. the "Agency Agreement")

11

(Count I) and/or breach of the closing instructions (Count II) in the alternative.  These claims are neither speculative, nor contrived and exceed the "plausibility standard" set forth in *Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007).

    As to the Jackson mortgage closing and subsequent title claim by JP Morgan, the Complaint describes how Bell Title's failure to secure closure of the Vermetti line of credit and/or discharge of the Vermetti mortgage prevented Resource Mortgage's assignee, JP Morgan, from obtaining a first lien position against the subject property as provided for in the title commitment and/or policy of insurance that was issued by Bell Title in conjunction with the closing.

    With respect to the Edwards mortgage closing and subsequent title claim by Argent, the Complaint describes how Bell Title's failure to timely record the Edwards mortgage enabled to bankruptcy trustee to challenge the validity of Argent's first lien against the subject property as provided for in the title commitment and/or policy of insurance that was issued by Bell Title in conjunction with the closing.

    Under the terms of the Agency Agreement, Bell Title was required to conduct these closings in accordance with recognized title insurance underwriting practices, the rules and instructions of ORT and state and local laws and practice.  To the extent ORT suffered claims losses arising from Bell Title's: (a) intentional omission from commitments and/or polices of reference to encumbrances or title defects disclosed, discovered or known to Bell Title at the time of issuance of such forms; (b) failure to disburse properly or close in accordance with escrow or closing instructions and/or (c) negligent errors or omissions in the search, examination or preparation of title insurance forms or in other procedures involved in processing an

application for title insurance, Bell Title agreed to reimburse ORT for all such losses which it has failed to do.

>    **2.    Affirmative and Sufficient Evidence Exists upon Which a Reasonable Factfinder Could Conclude that Bell Title is Liable for ORT's Losses in Conjunction With the Jackson Closing.**

The documentary evidence and affidavits of record reveal that Bell Title failed to conduct the Jackson closing and the requisite discharge of the Vermetti mortgage in accordance with state law and the related closing instructions, improperly disbursing proceeds from the Jackson mortgage to pay off the Vermetti revolving line of credit but otherwise failing to close the account and secure discharge of the corresponding mortgage.  These errors and omissions prevented the insured lender from securing the first lien position that was intended in the transaction and guaranteed through the commitment/policy of title insurance issued by Bell Title, necessitating a title claim under the policy and subsequent payment by ORT to clear title.

The Capper Affidavit attached to Defendant's motion reveals that Capper, who was responsible for conducting the closing, obtaining relevant documentation and distributing the mortgage proceeds in the Jackson transaction, clearly understood that the parties intended and expected that the Vermetti line of credit would be paid off and immediately closed and that the future advance mortgage would be promptly discharged from the public records at the time of closing.  Dkt.17, Ex.C at ¶ 3, 8.  Although Capper's standard practice and procedure as a Bell Title employee was to mail the check along with a written request by the borrower that the account be closed and the corresponding mortgage discharged, it was also Capper and/or Bell Title's standard practice and procedure to <u>not</u> follow up on such requests and to simply "assume" that if the payoff check was cashed and Bell Title heard nothing back from the mortgagee, the mortgage would be discharged.  *Id.*, at ¶ 11-13.

13

Indeed, and notwithstanding Capper's own acknowledgment that she was charged with obtaining relevant documentation for purposes of the Jackson closing, there is also no mention in Capper's Affidavit that copies of documentation evidencing the existence and transmittal of a close out letter and/or written acknowledgment by Standard Federal confirming closure of the line of credit and discharge of the Vermetti mortgage were ever made and kept as part of Bell Title's standard practice and procedure, a conclusion which is entirely consistent with Savich's recollection that no such documentation could be produced for purposes of defending against the LaSalle proceeding.

The absence of such documentation properly leads to an inference that such information would not be favorable to Bell Title. If nothing else, Bell Title's failure to secure and retain copies of such documents in the regular course of business and with respect to the Jackson closing, specifically, creates a genuine and material question of fact regarding Bell Title's handling of the Jackson transaction.

More troubling, however, is the fact that Bell Title's standard practice and procedure was also to assume that Michigan law required Standard Federal to discharge the mortgage once it accepted and cashed the "payoff check," which is a misstatement of Michigan law and the express provisions set forth within the mortgage, itself, which was both known and accessible to Bell Title at the time of closing.

Michigan law pertaining to the discharge of future advance mortgages is clear. Although Bell Title relies on M.C.L. § 565.41 for the proposition that a mortgagee must promptly discharge a mortgage after a mortgage has been *paid or otherwise satisfied*, regardless of whether the mortgagor would otherwise be allowed to continue drawing on the credit line, the Michigan Legislature has enacted several statutes which deal solely with future advance

14

mortgages and are dispositive of this issue. *Deutsche Bank Trust Co. Americas v. Spot Realty, Inc.*, 269 Mich. App. 607, 714 N.W.2d 409 (2005); *Flagstar Bank v. Charter Bank*, 2005 WL 2045907 (Mich. App. 2005).

M.C.L. § 565.901(1) defines the terms "future advance" and "future advance mortgage" as follows:

> (a) "Future advance" means an indebtedness or other obligation that is secured by a mortgage and arises or is incurred after the mortgage has been recorded, whether or not the future advance was obligatory or optional on the part of the mortgagee.
> (b) "Future advance mortgage" means a mortgage that secures a future advance and is recorded either prior to or after the effective date of this act....

M.C.L. § 565.901 further provides:

> Except as otherwise provided by this act, a future advance mortgage securing a future advance shall have priority with respect to the future advance as if the future advance was made at the time the future advance mortgage was recorded.

"By using the words paid *or* otherwise satisfied, the Legislature recognized that satisfaction of a mortgage may involve some action other than payment." *Flagstar, supra* at *4 (citation omitted). Thus, "a future advance mortgage is not 'paid or otherwise satisfied' pursuant to M.C.L. § 565.41 unless the debt is paid off *and* future advances are terminated, either because the secured credit line has expired or the borrower has closed the account." *Id*.

It is, likewise, clear from the face of the Vermetti mortgage that paying off the balance would not fully satisfy Vermetti's obligations or terminate the credit line. Vermetti would still have access to the credit line throughout its term and the mortgage would continue to secure such debt until such time as the account was paid off and closed and the mortgage discharged. Therefore, pursuant to the terms of the mortgage of record, two steps (i.e. pay off and

15

termination) had to be taken by Bell Title at the time of the Jackson closing to invoke Standard Federal's statutory duty to discharge the mortgage.

The proofs lead to the conclusion that Bell Title took only one of those steps and left termination of the credit line and corresponding discharge of the Standard Federal mortgage to chance. Such actions fall far short of that which was required of Bell Title pursuant to the Agency Agreement and the lender's closing instructions, resulting in the losses sustained by ORT.

3. **Affirmative and Sufficient Evidence Exists upon Which a Reasonable Factfinder Could Conclude that Bell Title is Liable for ORT's Losses in Conjunction With the Edwards Closing**.

The documentary evidence reveals that Bell Title failed to record the Edwards mortgage in accordance with the lender's closing instructions, again, leaving to chance whether the insured mortgage would be promptly and properly recorded. These errors and omissions prevented the insured lender from securing the first lien position that was intended in the transaction, expressly required by the closing instructions and guaranteed through the commitment/policy of title insurance that was issued by Bell Title, necessitating a title claim under the policy and subsequent payment by ORT to perfect the lender's first lien holder position thereafter.

The closing instructions provided by Argent to Bell Title in conjunction with the Edwards closing establish that Bell Title breached the Agency Agreement and/or the closing instructions by failing to record the Edwards mortgage within the time period provided therein and disbursing the mortgage proceeds prior to ensuring that Argent held a first lien holder position. Indeed, the closing instructions expressly provide that:

> **No disbursement of loan proceeds are permitted until Lender is assured of its position as First Lien Holder…**

Exhibit I, pg 1, ¶ 4.

16

**Submit all recordable instruments for recording within 24 hours of Lenders wiring of closing funds or expiration of rescission period, if applicable**

*Id.*, pg 2.

Notwithstanding these instructions, which Bell Title agreed to comply with, the Edwards mortgage was not submitted for recording within 24 hours of Argent's wiring of funds or expiration of the three day right of rescission. The Argent funds were wired on or about November 11, 2004 – the date upon which the Edwards mortgage was signed. After waiting the three day right of rescission period, Bell Title funded the loan on November 16, 2004. Kraushaar Affidavit, Dkt. 17, Ex.B at ¶ 6. The Edwards mortgage was not submitted for recording the following day, however. Rather, Bell Title submitted the mortgage for recording "four (4) business days" after this date, or on November 22, 2004. Kraushaar Affidavit, Dkt. 17, Ex.B at ¶ 9.

On this basis, there can be no dispute that Bell Title failed to disburse the proceeds properly or close in accordance with the escrow or closing instructions. The mortgage, itself, was not submitted for recording within the 24 hour time period set forth in the closing instructions and the funds were disbursed before Argent's first lien position was secured. Had Argent's first lien position been secured consistent with the instructions, the subsequent adversary proceeding and corresponding title claim would not have arisen.

As with the JP Morgan claim, Bell Title conveniently seeks to blame someone else – in this instance, the Ingham County Register of Deeds – for its own failure to follow up with third-parties to ensure that the very duties that Bell Title was charged with performing were completed. Even if Bell Title could explain away the obvious errors and omissions set forth above, it appears from the Single Ledger Balance Report attached to the Kraushaar Affidavit that the check which was issued to the Ingham County Register of Deeds for recording was in the

amount of $1,209.40. The fee to record the Edwards mortgage would have been approximately $80. **Exhibit L:** Fee Schedule. Thus, contrary to Bell Title's assertion that no evidence exists as to why the Edwards mortgage was delayed in recording, material questions of fact remain as to whether the Edwards mortgage was delivered to the Register of deeds with all appropriate fees. For this reason, too, Defendant's motion must be denied.

## VI.  CONCLUSION

For all of the reasons set forth above, the Court should deny Defendant's Motion to Dismiss and/or for Full or Partial Summary Judgment and grant such other and further relief as is just and proper under the circumstances.

Respectfully Submitted,

s/Charity A. Olson
CHARITY A. OLSON (P68295)
KURT E. RIEDEL (P27190
Plunkett Cooney
Attorneys for Plaintiff
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, MI 48304
(248) 901-4018
colson@plunkettcooney.com

Dated: July 31, 2009

PROOF OF SERVICE

I, Charity A. Olson, hereby certify that on July 31, 2009, a copy of Plaintiff, Old Republic National Title Insurance Co's, Response to Defendant Bell Title's Motion to Dismiss and/or for Full or Partial Summary Judgment, for Charity A. Olson, as counsel in this case for Plaintiff, Old Republic, was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

WILLIAM E. HOSLER (P41257)
Williams, Williams, Rattner & Plunkett, P.C.
Attorneys for Defendant
weh@wwrplaw.com

By:      s/Charity A. Olson
CHARITY A. OLSON (P68295)
KURT E. RIEDEL (P27190
Plunkett Cooney
Attorneys for Plaintiff
38505 Woodward Ave., Ste. 2000
Bloomfield Hills, MI 48304

(248) 901-4018
colson@plunkettcooney.com

Blmfield.16164.81246.1141171-1