UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
|
OLD REPUBLIC NATIONAL TITLE |
INSURANCE COMPANY, a Minnesota corporation, | Case No. 1:08-cv-796
|
Plaintiff, |
| HONORABLE PAUL L. MALONEY
v. |
|
ESCROW AND TITLE SERVICES, INC., |
d/b/a Bell Title Company, |
|
Defendant. |
|
_____|

# OPINION and ORDER

**Dismissing Complaint Without Prejudice due to Inadequate Jurisdictional Allegations;
Permitting the Plaintiff to Rectify the Defect by a Date Certain;
Denying Without Prejudice as Moot the Defendant's Dispositive Motion**

Under Michigan common law, plaintiff Old Republic National Title Insurance Company ("Old Republic") asserts two breach-of-contract claims and one negligence claim against defendant Escrow & Title Services, Inc., which does business as Bell Title Company ("Bell"). In September 1994, the parties entered into a contract which appointed Bell as Old Republic's agent to issue title insurance policies in connection with real estate transaction closings ("the agreement"). *See* Comp ¶ 6 and Ex A. As the title-insurance agent, Bell kept a portion of the title insurance premium paid for each Old Republic title that it issued in Michigan, remitting the remainder to Old Republic. *See* Comp ¶ 7. In return, section 8 of the agreement, entitled Preparation of policies and Commitments, obligated Bell to expressly identify as exceptions to coverage all matters such as taxes,

encumbrances, liens, restrictions, easements, and any other items which constituted a defect in title or raised a question as to the validity or marketability of the title being insured. *See id.* ¶ 8.

Section seven obligated Bell to indemnify Old Republic for certain losses arising from Bell's issuance of title commitments and policies underwritten by Old Republic, including payments to insured parties and third-party claimants. The agreement defines these indemnifiable losses to include (1) Bell's intentional or negligent failure to comply with the terms of the agreement or Old Republic's rules, regulations or instructions; (2) Bell's intentional omission (from commitments or policies) of references to encumbrances or title defects which were disclosed by the insured's application, by Bell's search and examination of title, by an approved examiner's report, by certification of title, or which were otherwise known to Bell when it issued the title insurance policy; (3) Bell's improper closing or improper attempted closing, including but not limited to the failure to disburse properly or to close in accordance with escrow or closing instructions; and (4) negligent errors or omissions in the title search, title examination, title insurance form preparation, or other procedures involving a title insurance application. *See* Comp ¶ 9.

Settlement of the Thompson and Johnson Claims. Old Republic originally asserted five claims against Bell. On June 30, 2009, the court entered a joint stipulation which settled Old Republic's claims regarding a February 2003 closing for Jeffrey and Barbara Thompson, *see* Comp ¶¶ 10-19; and a November 2004 transaction involving Crystal Rhodes and LaQuisha Jones ("the Johnson claim"), *see* Comp ¶¶ 27-37.

Edwards Transaction. Old Republic's claims remain as to three transactions. First, Argent Mortgage Company, LLC ("Argent") issued a first-mortgage loan to Patricia Edwards and Terry Towers ("the Edwards transaction"), and Bell issued a title insurance commitment to Argent to

insure its first-mortgage lien. The Argent mortgage closing took place on November 11, 2004, yet Bell allegedly failed to deliver the mortgage to the Ingham County Register of Deeds for recordation until January 31, 2005. *See* Comp ¶¶ 20-22. Meanwhile, on December 6, 2004, mortgagor Edwards filed a petition for Chapter 7 bankruptcy protection. Because the mortgage lien had not been recorded within the ten-day period set forth in 11 U.S.C. § 547(e)(2)(C)(ii), the bankruptcy trustee initiated an adversary proceeding against Argent to avoid the mortgage as a "preferential transfer".[1] To preserve Argent's mortgage lien, Old Republic paid $19,000 to the bankruptcy trustee to settle

---

[1]

In the federal bankruptcy code, a preferential transfer is defined as "any transfer of an interest of the debtor in property –

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made –
 (A) on or within ninety days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547(b). "'Property of the debtor' subject to the preferential transfer provision is best understood as that property [which] would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Central Va. Cmty. Coll v. Katz*, 546 U.S. 356, 373 n.10 (2006) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)). *See, e.g., In re Wells*, 561 F.3d 633 (6th Cir. 2009) (Ryan, Siler, Griffin), *reh'g & reh'g en banc denied* (6th Cir. July 14, 2009).

the adversary proceeding and fully perfect Argent's interest in the property. Old Republic also incurred about $2,500 in attorneys' fees and costs. *See* Comp ¶¶ 23-26.

The Jackson Closing. On February 28, 2003, Resource Mortgage issued a first-mortgage loan to Andrew and Rose Jackson, secured by property in Lansing, Michigan, and Bell issued a title insurance commitment to Resource to insure its first-mortgage lien interest in the property. Resource later assigned the mortgage to JP Morgan Chase Bank ("JP Morgan"). *See* Comp ¶¶ 38-39 and 43. The closing proceeds were to be used to pay off and discharge an existing $70,000 home-equity line of credit ("HELOC")to LaSalle Bank Midwest N.A. (n/k/a Bank of America); Bell paid off the LaSalle HELOC at closing, but allegedly failed to close the account or secure the discharge of LaSalle's HELOC lien. *See* Comp ¶¶ 40-41. The Jacksons subsequently withdrew additional funds from the HELOC which they failed to repay. *See* Comp ¶ 42. In October 2005, LaSalle sued in Michigan state court to foreclose on its first-lien mortgage ("the Oakland County action"); to preserve JP Morgan's mortgage interest in that same real property, Old Republic paid LaSalle about $81,600 to pay-off and discharge the LaSalle HELOC. Old Republic also incurred about $1,300 in attorneys' fees and costs. *See* Comp ¶¶ 44-46.

The Fanke Transaction. On November 28, 2000, First Residential Mortgage Network ("First Residential") issued a $110,700 first-mortgage loan to Michael Fanke to pay off two existing mortgages on real property in Portage, Michigan; it was recorded with the Kalamazoo County Register of Deeds; Bell issued a title insurance commitment to First Residential to insure its first-mortgage lien; and First Residential later assigned the mortgage to Chase Manhattan Mortgage Corporation ("Chase"). *See* Comp ¶¶ 47-48. Although Fanke was married, Bell allegedly failed to obtain the signature of Fanke's wife on the mortgage documents at closing, thereby failing to

address her dower interest.[2]  *See* Comp ¶ 49.  Fanke ultimately defaulted on the mortgage, but the absence of his wife's signature on the mortgage at closing prevented mortgagee Chase from proceeding with judicial foreclosure proceedings.  *See* Comp ¶¶ 50-51.  Old Republic filed suit on behalf of mortgagor Chase to reform the mortgage and establish an equitable lien against the subject real property, incurring about $5,200 in attorneys' fees and costs.  *See* Comp ¶¶ 52-53.

Old Republic's Claims Against Bell Title.

**With regard to the Edwards closing**, Old Republic claims that Bell's alleged failure to timely record the Argent mortgage lien[3] constituted breach of contract, breach of closing instructions, and common-law negligence or gross negligence.  *See* Comp¶ 55b and ¶ 59b and ¶¶ 63-66.

**With regard to the Jackson closing**, Old Republic claims that Bell's failure to discharge

---

[2]

In Michigan, a widow is statutorily entitled to dower, i.e., the use during her natural life, of one-third of all lands whereof her husband was seized of an inheritable estate at any time during the marriage unless she is lawfully barred."  *In re Stroh Estate*, 392 N.W.2d 192, 194 (Mich. App. 1986) (citing Mich. Comp. Laws § 558.1).

"'No contract of sale or conveyance made by a husband without his wife's signature will operate to deprive her of her dower.'"  *Clancy Realtors v. Rubick*, 2008 WL 4958793, *6 (Mich. App. Nov. 20, 2008) (p.c.) (P.J. Hoekstra, Whitbeck, Talbot) (quoting *Stroh Estate*, 392 N.W.2d at 194 (citing *Gluc v. Klein*, 197 N.W. 1051 (Mich. 1924) and *Delaney v. Manshum*, 109 N.W. 1051 (Mich. 1906))).  In other words, notwithstanding a conveyance by a husband in which the wife did not join, "the husband is considered so seized of the premises as to entitle the wife to dower" if he predeceases her.  *Stroh Estate*, 392 N.W.2d at 194 (citing *Killackey v. Killackey*, 131 N.W. 519 (Mich. 1911) and *May v. Specht*, 1 Mich. 187 (Mich. 1849)).

[3]

*See generally Rogow v. Comerica Bank*, 2007 WL 624669, *2 (Mich. App. Mar. 1, 2007) (p.c.) (P.J. O'Connell, Saad, Talbot) (discussing the "race-notice" statute, MICH. COMP. LAWS § 565.29, and the potential consequences of failing to properly and timely record a mortgage lien), *app. denied*, 737 N.W.2d 718 (Mich. 2007).

and close the LaSalle Bank HELOC constituted breach of contract, breach of closing instructions, and common-law negligence or gross negligence. *See* Comp¶ 55d and ¶ 59d and ¶¶ 63-66.

**With regard to the Fanke closing**, Old Republic claims that Bell's failure to obtain the signature of Fanke's wife on the mortgage documents (to address her dower rights) constituted a breach of contract, breach of the closing instructions,[4] and common-law negligence or gross negligence. *See* Comp¶ 55e and ¶ 59e and ¶¶ 63-66.

In total, Old Republic's complaint seeks indemnification of about $244,000; the prayer for relief does not specify whether the indemnification obligation arises from the contract, from the common law, from statute, or some combination of the three. Also, the $244,000 presumably includes damages from the Thompson and Johnson claims, which have been settled and dismissed.

<u>The Complaint Fails to Establish Federal Jurisdiction.</u>

Thus far, Bell has not disputed the complaint's allegations that Old Republic is a Minnesota corporation and that Bell is a Michigan corporation, *see* Original Complaint filed August 21, 2008 ("Comp") ¶¶ 1 and 3. The complaint asserts diversity jurisdiction, *see* Comp ¶ 4 (citing 28 U.S.C. § 1332), but it fails to specify the principal place of business ("PPB") of either party, let alone allege facts to support such allegations. For the reasons that follow, the court determines that plaintiff Old Republic has not met its burden of establishing the complete diversity of citizenship required for federal diversity jurisdiction.

The Supreme Court and our Circuit recently reaffirmed a district court's right and obligation

---

[4] *Cf., e.g., New Freedom Mortg. Corp. v. Globe Mortg. Corp.*, 761 N.W.2d 832, 842-43 (Mich. App. 2008) (violation of mortgage lender's closing instructions by title insurer's issuing agent did not relate to the title to lender's interest in the property, the validity of the lender's lien, or the collection of funds due to the lender, and thus the title insurer was not liable to the lender for said violations pursuant to "closing protection letters" which the title insurer issued to the lender).

to independently examine whether it has jurisdiction, without a motion or request from a party:

> The objection that a federal court lacks subject-matter jurisdiction, *see* Fed. Rule Civ. Proc. 12(b)(1), *may be raised* by a party, or *by a court on its own initiative*, *at any stage of the litigation.* ... Rule 12(h)(3) instructs: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction, the court shall dismiss the action."

*American Telecom Co., LLC v. Republic of Lebanon*, 501 F.3d 534, 539 (6th Cir. 2007) (footnote omitted) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004))), *cert. denied*, – U.S. –, 128 S.Ct. 1472 (2008).

Going further, our Circuit has stated, "it is axiomatic that we *must* raise issues of subject-matter jurisdiction *sua sponte*." *Clarke v. Mindis Metals, Inc.*, No. 95-5517, 99 F.3d 1138, 1996 WL 616677, *3 (6th Cir. Oct. 24, 1996) (emphasis added) (citing *Cmty. First Bank v. NCUA*, 41 F.3d 1050, 1053 (6th Cir. 1994)). *See, e.g., CMS North America, Inc. v. DeLorenzo Marble & Tile, Inc.*, 521 F. Supp.2d 619, (W.D. Mich. 2007) (Maloney, J.) ("[E]ven if CMS had never filed a motion for remand, this court would have had the right and obligation to ascertain whether it had subject-matter jurisdiction.") (collecting cases).[5]

Title 28 U.S.C. § 1331 provides that the district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." This court may

---

[5] *See, e.g., Wagenknecht v. US*, 509 F.3d 729 (6th Cir. 2007) (affirming district court's *sua sponte* dismissal without prejudice of certain claims for lack of subject-matter jurisdiction);

*Probus v. Charter Communications, LLC*, 234 F. App'x 404, 405 (6th Cir. 2007) (plaintiff's failure to move to remand to state court did not preclude district court *sua sponte* examining whether federal jurisdiction existed) ("Because we find that the district court entertained jurisdiction of this case in the absence of complete diversity, we vacate the district court's judgment and remand the case to the district court so that it may resolve the issue of fraudulent joinder in order to determine whether there was complete diversity.")

exercise such federal-question jurisdiction only if the well-pleaded allegations of the complaint, not any potential defenses, arise under federal law – this is the so-called well-pleaded complaint rule. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc) (Batchelder, J., joined by Griffin, J., et al.) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003)), *cert. denied*, – U.S. –, 128 S.Ct. 2426 (2008).

The complaint does not assert any cause of action even arguably arising under federal law. In short, it appears that this court does not have federal-question jurisdiction. Absent federal-question jurisdiction, this court cannot proceed to the merits of the case unless it has diversity jurisdiction. As the plaintiff, Old Republic has the burden of establishing all the elements of diversity jurisdiction. *See McNutt v. GMAC of Indiana*, 298 U.S. 178, 189 (1936); *Certain Interested Underwriters at Lloyd's London v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994) (citing, *inter alia*, FED. R. CIV. P. 8(a) and *Ohio Nat'l Life Ins. Co. v. US*, 922 F.2d 320, 326 (6th Cir. 1990)).

Title 28 U.S.C. § 1332 authorizes district courts to exercise diversity jurisdiction only when there is *complete* diversity of citizenship. *Probus v. Charter Communications, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). Complete diversity exists only when no plaintiff and no defendant are citizens of the same state. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 540 (6th Cir. 2006) (citing *Jerome-Duncan, Inc. v. Auto-by-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)).

The complaint asserts that "[t]his court has subject matter jurisdiction under 28 U.S.C. § 1332, as complete diversity exists between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000", Comp ¶ 4, but it fails to allege specific facts that might substantiate this assertion as to citizenship. The complaint alleges only that Old Republic is a

Minnesota corporation and "is licensed by the Michigan Department of Labor and Economic Growth to issue title insurance policies in the State of Michigan," *see* Comp ¶¶ 1-2, and that Bell "is a Michigan corporation that does business in the . . . State of Michigan . . .", *see* Comp ¶ 3.

As to corporate parties, the rule for American corporations is that for the purpose of determining diversity jurisdiction and removability, a corporation is deemed to be a citizen both of any state where it is incorporated *and* the state where it maintains its principal place of business.[6] *Wolf v. Bankers Life & Cas. Co.*, 519 F. Supp.2d 674, 676 n. 1 (W.D. Mich. 2007) (Maloney, J.) (citing 28 U.S.C. § 1332(c)(1)). The complaint alleges that the plaintiff is a Minnesota corporation, but it does not specify where it maintains its principal place of business. Likewise, the complaint alleges that Bell Title is a Michigan corporation, but it does not specify where it believes Bell Title maintains its principal place of business. *Cf. American Nat'l Fire Ins. Co. v. Mirasco, Inc.*, No. 99-cv-12405, 2000 WL 1368009, *2 (S.D.N.Y. Sept. 20, 2000) (requiring corporate plaintiffs to amend complaint to sufficiently allege facts establishing their own citizenship) (citing *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) (allegation that corporation has "an office" in New York was insufficient to establish that New York was its PPB)).

It is not enough for the plaintiff to tell the court which States have licensed or otherwise authorized the corporation to transact business in their State, or where the corporation has a registered office. *See Poly-Flex Const., Inc. v. Neyer, Tiseo & Hindo, Ltd.*, 2008 WL 793759, *3 (W.D. Mich. Mar. 24, 2008) (Maloney, J.) ("It is not enough for Poly-Flex to allege that it has 'an address of . . . Grand Prairie, Texas' or that NTH has 'a registered address of . . . Detroit, Michigan'

---

[6] Even if Old Republic timely files an amended complaint that specifies the principal place of business of the corporate parties, this order will not prevent Bell from contending that a party's principal place of business is in a state other than that alleged by the amended complaint.

. . . . 'A document listing a corporate defendant's business address is wholly insufficient to establish either its place of incorporation or *its principal place of business*. . . .'") (quoting *Barlow v. K.L. Harring Transp.*, 2006 WL 3104705, *1 (E.D. Mich. Oct. 31, 2006) (citing *Johnson v. Pharmacia & Upjohn Co.*, 1999 WL 1005653, *4 (W.D. Mich. Oct. 12, 1999) (Quist, J.)).[7]

Under our Circuit's total-activities test, "'[t]he question of a corporation's principal place of business is essentially one of fact, to be determined on a case-by-case basis, taking into account the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations.'" *Century Business Servs., Inc. v. Bryant*, 69 F. App'x 306, 313 (6th Cir. 2003)) (quoting *Gafford v. GE Co.*, 997 F.2d 150, 161 (6th Cir. 1993)); *see, e.g., Collins v. Louisville Ladder, Inc.*, 2007 WL 1973551 (E.D. Ky. July 3, 2007) (applying "total activities" test).

Under this "total activities" test, a corporation's principal place of business is not necessarily the state where it has its main administrative or executive offices or other nominal "headquarters." *See Riggs v. Island Creek Coal Co.*, 542 F.2d 339, 342 (6th Cir. 1976) (a corporation's headquarters "does not invariably govern the location of its principal place of business"); *see, e.g., Teal Energy*, 369 F.3d at 876-78 (district court did not clearly err in finding that plaintiff corporation's principal place of business was Texas, where almost all of its oil and gas development revenue was being

---

[7]

*Accord Smith v. Intex Recreation Corp.*, 755 F. Supp. 712 (M.D. La. 1991) (allegation that defendant corporation was a California corporation having business at a particular address in California was not sufficient to establish citizenship for purpose of diversity, so plaintiff was required to amend the complaint), *aff'd w/o op.*, 1994 WL 24927 (5th Cir. Jan. 7, 1994);

*Cf. American Motorists Ins. Co. v. American Employers Ins. Co.*, 600 F.2d 15, 16 (6th Cir. 1979) (for diversity purposes, it was not enough for the complaint to assert that the defendant corporation was "licensed to do business and doing business in Louisiana"), *cited by Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 880 n.30 (6th Cir. 2004); *accord Vays v. Ryder Truck Rental, Inc.*, 240 F. Supp.2d 263, 265 (S.D.N.Y. 2002) ("[I]t is not sufficient to allege that a corporation is licensed to do business in a state, or that it does business in a state.") (citation omitted).

earned at the time the complaint was filed, rather than Canada, where its headquarters was located).

Thus, Old Republic "must specifically allege the states in which it believes each party maintains its principal place of business, *and provide underlying facts to support that allegation*, both of which the current complaint fails to do." *Poly-Flex Const., Inc. v. NT&H, Ltd.*, 2008 WL 793759, *3 (W.D. Mich. Mar. 24, 2008) (emphasis added) (citing *Sinclair v. Bankers Trust Co. of Calif, N.A.*, 2005 WL 3434827, *2 n.1 (W.D. Mich. Dec. 13, 2005) (Quist, J.) ("Sinclair alleges that . . . she is a citizen of Michigan and that Bankers Trust is a California corporation. She does not allege that Bankers Trust's principal place of business is not in Michigan. If Bankers' Trust's principal place of business were in Michigan, then diversity of citizenship would not exist.")).

On the present record, the court cannot rule out the possibility that plaintiff is a citizen of the same state as a defendant, and "the court cannot simply assume that they are not." *Ellis v. Kaye-Kibbey*, 2008 WL 2696891, *2 (W.D. Mich. July 1, 2008) (Maloney, C.J.) (citing *Tsesmelys v. Dublin Truck Leasing Corp.*, 78 F.R.D. 181, 182 (E.D. Tenn. 1976) ("[A]llegations of the citizenships of the parties . . . is of the essence of jurisdiction and, being so essential, their absence can neither be overlooked nor supplied by inference.") (citations omitted)).

Therefore, Old Republic has not carried its burden of establishing the existence of federal jurisdiction, and the case is properly dismissed until and unless it corrects that defect. *See Cooper v. Cianfrocca*, 2001 WL 640808 (S.D.N.Y. 2001) ("The complaint is dismissed sua sponte for failure to allege facts sufficient to establish subject matter jurisdiction. 28 U.S.C. § 1332 requires that the parties be of diverse citizenship, not residence. Plaintiffs may file an amended complaint sufficiently alleging jurisdiction . . . on or before . . . ."); *accord Royal Ins. Co. of America v. Caleb V. Smith & Sons, Inc.*, 929 F. Supp. 606, 608 (D. Conn. 1996) ("Allegations of complete diversity

must be apparent from the pleadings.") (citing FED. R. CIV. P. 8(a)(1) and *John Birch Society v. NBC*, 377 F.2d 194, 197-99 (2d Cir. 1967)).[8]

## ORDER

The complaint is **DISMISSED without prejudice for lack of subject-matter jurisdiction.**[9]

No later than Wednesday, December 2, 2009, the plaintiff **MAY FILE** an amended complaint which supplies sufficient factual allegations to establish diversity jurisdiction.

Any amended complaint **SHALL** do the following:

– omit material relevant only to claims dismissed on June 30, 2009;

---

[8] *See also Levering & Garrigues Co. v. Morrin*, 61 F.2d 115, 121 (2d Cir. 1932) (where plaintiff adequately alleged citizenship of individual defendants but not citizenship of defendant labor unions, the Court of Appeals reversed the grant of an injunction and remanded to the district court "with directions to dismiss the complaint without prejudice, for lack of jurisdiction, unless the plaintiffs shall amend to correct the jurisdictional defect."), *aff'd o.g.*, 289 U.S. 103 (1933).

[9] *Accord Century 21 Real Estate, LLC v. San Vicente Real Estate Servs., Inc.*, 2007 WL 2317093, *1 (S.D. Cal. 2007) ("Because the complaint does not allege any facts necessary to establish complete diversity as required by 28 U.S.C. § 1332, it is dismissed for lack of subject matter jurisdiction. Plaintiff may amend the complaint by sufficiently alleging the citizenship of each of its members.") (citing 28 U.S.C. § 1653);

*Joaquin v. GEICO Gen. Ins. Co.*, 2007 WL 1821403, *1 (N.D. Cal. 2007) ("Joaquin fails to adequately allege the citizenship of GEICO. * * * Accordingly, the instant action is hereby dismissed for lack of subject-matter jurisdiction, with leave to amend.");

*Leica Microsys., Inc. v. Potter*, 2007 WL 1188199, *1 (D. Ariz. 2007) ("The jurisdictional allegations . . . are inadequate . . . since the Complaint only states the residency of each Defendant. * * * [The] Complaint. . . is dismissed for lack of subject matter jurisdiction, and the Plaintiff shall file an amended complaint properly stating a jurisdictional basis for this action . . . . [F]ailure to timely comply with this order shall result in dismissal of this action without further notice.");

*Multi-M Int'l, Inc. v. Paige Med. Supply Co., Inc.*, 142 F.R.D. 150, 152 (N.D. Ill. 1992) ("It may be possible for plaintiff to correct the deficiencies noted in its allegation of diversity jurisdiction. * * * The complaint is dismissed sua sponte. Plaintiff is granted leave to file an amended complaint on or before . . . .").

- calculate indemnification without reference to claims dismissed on June 30, 2009;
- specify the source of authority for indemnification (i.e., contract, statute, etc.).

This does **NOT** constitute leave to amend the complaint in any other respect; such leave must be sought in the usual fashion under FED. R. CIV. P. 15(a) and, if applicable, FED. R. CIV. P. 16(b).

Defendant's motion to dismiss or for summary judgment on the original complaint [#17] is **DENIED without prejudice as moot.**[10]

This is not a final and immediately appealable order.

**IT IS SO ORDERED** on this 4th day of November 2009.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[10]

*See Edwards & Assocs., Inc. v. Atlas-Telecom Servs. USA, Inc.*, 2007 WL 30256, *8 (N.D. Tex. Jan. 4, 2007) ("[T]he plaintiff shall amend its petition to properly allege . . . the state(s) of citizenship of the corporate parties . . . . * * * All pending Rule 12 motions to dismiss are denied as moot. The defendants shall have leave, however, to reassert their motions . . . .");